FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

00 SEP 26  AM 9:40

U.S. DISTRICT COURT
N.D. OF ALABAMA

RICKY WILLIAMS,                        )
                                       )
            Plaintiff,                 )
                                       )
vs.                                    )      CV 97-S-1213-NE
                                       )
                                       )
SHERIFF GRADY ROSE;                    )
DEPUTY BRADLEY WADE;                   )
DEPUTY LYNDON McWHORTER;               )
and DEPUTY JAMES McCULLOCH,            )
                                       )
            Defendants.                )

**ENTERED**

SEP 26 2000

## MEMORANDUM OF OPINION

This is a civil action pursuant to 42 U.S.C. § 1983 in which

the plaintiff, Ricky Williams,  alleges that he has been deprived

of  rights,  privileges,  or  immunities  afforded  him  under  the

Constitution or laws of the United States of America.  Plaintiff is

an inmate in the Alabama penal system and is presently incarcerated

at Limestone Correctional Facility in Capshaw, Alabama.  In his *pro*

*se* complaint, plaintiff names as defendants Lawrence County Sheriff

Grady  Rose,  Deputy  Bradley  Wade,  Deputy  Lyndon  McWhorter,  and

Deputy James McCulloch.  Plaintiff claims that he was illegally

arrested  and  that  the  arresting  officers  used  excessive  force

against him.  As relief for the alleged constitutional violations, plaintiff seeks a declaratory judgment and money damages.

The court entered an order for special report, directing that copies of the complaint be forwarded to each of the remaining named defendants and requesting that those defendants submit a special report addressing the factual allegations of plaintiff's complaint. Defendants were advised that the special report could be submitted under oath or accompanied by affidavits and that the report, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of *Federal Rules of Civil Procedure*.  By the same order plaintiff was advised that after he received a copy of the special report submitted by defendants he should file counter affidavits if he wished to rebut the matters presented by defendants in the special report.  Plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of defendants' special report.

Defendants submitted a special report accompanied by documents, their affidavits, and the affidavit of Charles Hamby. In their special report, the defendants also raised the defense of qualified immunity.  After defendants submitted their special report,  plaintiff was again notified that he would have twenty days to respond to the motion for summary judgment, filing

2

affidavits or other documents if he chose.  Plaintiff was reminded of the consequences of any default or failure to comply with FED. R. CIV. P. 56. *See Griffith v. Wainwright,* 772 F.2d 822,825 (11th Cir. 1985).  Plaintiff responded by submitting his affidavit in opposition to the defendants' motion for summary judgment.

Plaintiff has since filed a motion to dismiss this action (Document #45).  Although plaintiff does not specifically so state in his motion, the court deems his motion to be a request to dismiss this action without prejudice.  Under the circumstances of this case, however,  plaintiff is not entitled to a voluntary dismissal without prejudice pursuant to Rule 41(a), FED. R. CIV. P. Plaintiff's motion to dismiss without prejudice is therefore due to be DENIED.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56.  In making that assessment, the court must view the evidence in a light most

3

favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,'

4

> since a complete failure of proof concerning
> an essential element of the non-moving party's
> case necessarily renders all other facts
> immaterial." Thus, under such circumstances,
> the public official is entitled to judgment as
> a matter of law, because the plaintiff has
> failed to carry the burden of proof. This
> rule facilitates the dismissal of factually
> unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).


## FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. On the evening of November 1, 1996, Deputy Bradley Wade, Captain Lyndon McWhorter, and Deputy James McCulloch were conducting a "street sweeper" operation in an area of Lawrence County "known for high drug trafficking and use." Wade Affidavit (Attachment to Document #22) at 2. After assisting Captain McWhorter and Deputy McCulloch with a traffic stop, Deputy Wade left the other two officers "to patrol on [his] own." *Id.* Shortly thereafter, Deputy Wade stopped a vehicle that had only one headlight. As Deputy Wade approached the driver's side of this vehicle, he "could easily smell alcohol from within the car." *Id.* A female, Jackie Jones, was driving this

5

vehicle and plaintiff was in the passenger seat. Deputy Wade "was quite familiar" with plaintiff, who had a "general reputation for being a dangerous person and a career criminal in and around Lawrence County." *Id.* at 2, 4.

Deputy Wade asked Ms. Jones for her driver's license and Ms. Wade responded that her license had been suspended. At this time, plaintiff "was cutting up and continuously asking what was going on." *Id.* at 2. Deputy Wade instructed plaintiff "to calm down" until he could check on Ms. Jones' license. Because he "could smell the strong odor of alcohol coming from the car," *id.*, Deputy Wade asked Ms. Jones if there was "anything in the car," and Ms. Jones said, "[O]ne can of beer and one bottle of wine," Complaint (Document #1) at 5. Plaintiff then "reached under the seat and pulled out" a bottle of wine and a can of beer. Wade Affidavit at 2. Deputy Wade took the bottle of wine and can of beer and placed them on the top of the car. During this time, plaintiff "kept asking [Deputy Wade] to give them a break and let them go." *Id.* at 2-3.

Deputy Wade instructed plaintiff to remain in the car and walked around the back of the car towards the passenger side. Plaintiff "jumped out of the car" and met Deputy Wade at the rear

6

of the car, "continuously asking [Wade] to give him a break." *Id.* at 3. When Deputy Wade told plaintiff that he was under arrest for illegal possession of alcohol, plaintiff took several steps away from Wade, "as if he were going to run away." *Id.* Deputy Wade ordered plaintiff to stop and took several steps toward plaintiff. When Deputy Wade attempted to handcuff plaintiff, plaintiff "pulled away and jumped back in the car." *Id.*

Deputy Wade instructed plaintiff to step out of the car, then moved toward the car to handcuff plaintiff. Plaintiff "began swinging his fist, kicking his feet and cussing at [Deputy Wade]." *Id.* Deputy Wade radioed Captain McWhorter and requested assistance "in removing Ricky Williams from his car." *Id.* Deputy Wade then again attempted to handcuff plaintiff, at which time plaintiff began "wrestling with [Wade], swinging his fist at [Wade] and kicking [Wade]." *Id.* While engaged in this physical altercation with plaintiff, Deputy Wade also "had to keep an eye on Ms. Jones," who had exited the car and was standing by the door "screaming and yelling." *Id.* Deputy Wade states that, during this altercation, he "sprayed [plaintiff] with pepper spray as [he] felt that plaintiff was about to harm both himself and [Wade] as he was swinging his fists at [Wade], kicking at [Wade], and cussing

7

[Wade]." *Id.* at 4.  As additional factors in his decision to use pepper spray, Deputy Wade states that he was attempting to protect his weapon from being taken by plaintiff and was concerned that Ms. Jones might attempt to assist plaintiff.  Deputy Wade also states that he has "been trained and certified to use pepper spray," and that, "[i]n using pepper spray on the plaintiff, [he] only used the minimal amount of force [he] felt necessary to protect [him]self and the plaintiff and prevent the plaintiff from escaping." *Id.* at 5.

When Captain McWhorter received Deputy Wade's radio request for assistance with Ricky Williams, he immediately drove to Deputy Wade's location, "as [he] was very familiar with Ricky Williams and his propensity for fighting, escaping, and having a belligerent attitude."  McWhorter Affidavit (Attachment to Document #22) at 2. Deputy McCulloch, who was in the vehicle with Captain McWhorter, also knew plaintiff, "his reputation for violence," and his propensity to attempt to escape and/or to fight when arrested. McCulloch Affidavit (Attachment to Document #22) at 2. Captain McWhorter and Deputy McCulloch arrived at the scene within a minute or two of receiving Deputy Wade's request for assistance. At the time they arrived, Deputy Wade was inside the car,

8

"wrestling with plaintiff, who was trying to crawl out of the open driver's door." Wade Affidavit at 4. Captain McWhorter immediately took Ms. Jones "to the front of the car to get her out of the way," while Deputy McCulloch went to assist Deputy Wade in subduing plaintiff. McWhorter Affidavit at 2.

When Deputy McCulloch reached the vehicle, he "observed plaintiff fighting with [Deputy] Wade in a very belligerent manner." McCulloch Affidavit at 2. As the deputies pulled plaintiff, "who was highly intoxicated," from the car, plaintiff "was cursing, swinging at [the deputies], hitting, kicking, and spitting on [them]." Id. Plaintiff states that, during this process, Deputies Wade and McCulloch struck him in the face, tore his shirt off of him, and sprayed him twice with chemical spray. Complaint at 5. The deputies managed to subdue plaintiff, "who was highly intoxicated," place him on the ground, and handcuff him. McCulloch Affidavit at 2.

Plaintiff and Ms. Jones were then placed in the back seal of a patrol car and the vehicle in which they had been riding was searched. During this search, the officers found "a hand-rolled marijuana cigarette, a cigarette case and several packs of rolling papers." Wade Affidavit at 4. Plaintiff was charged with illegal possession of alcohol, resisting arrest, possession of marijuana,

9

and possession of drug paraphernalia and he and Ms. Jones were then transported to the Lawrence County Jail.  *Id.*

At no time while at the scene of the arrest did plaintiff complain to any of the deputies that he had sustained an injury, although both Deputy Wade and Captain McWhorter observed a minor abrasion on plaintiff's chin.  Wade Affidavit at 5; McWhorter Affidavit at 3; McCulloch Affidavit at 2.  When plaintiff arrived at the Lawrence County Jail, he "was quite intoxicated" and was "extremely rowdy, very aggressive, and was cursing at [Deputy Hamby] and the other officers."  Hamby Affidavit (Attachment to Document #22) at 2-3.  Due to his intoxication, plaintiff was unable to answer the questions on the health-screening form. Deputy Hamby states, however,  that he "would have noted any of [his] observations regarding trauma, illness, pain, bleeding, or other symptoms" that would have required medical treatment and that he did not "make any such notations."  *Id.* at 2.  Deputy Hamby did observe "a small abrasion on the plaintiff's chin, but there was no blood, no large cuts, or bruises of any kind on the rest of his face or any parts of his body which [Deputy Hamby] could observe." *Id.*   Plaintiff did not request medical treatment for any problem during the booking process or after being placed in a cell.  *Id.*

10

When Deputy Hamby and Deputy Pate, neither of whom are named as defendants in this action, attempted to place plaintiff in a cell, plaintiff ran away from the two officers.  Deputy Pate ran after and caught plaintiff, who then began to wrestle with Deputy Pate.  Both Deputy Pate and Deputy Hamby sprayed plaintiff with pepper spray.  As soon as plaintiff was subdued and handcuffed, "decontamination procedures were immediately started so that the pepper spray could be washed away from the plaintiff's eyes and face." *Id.* at 3.

In September 1997, plaintiff entered into a plea bargain agreement whereby he agreed to enter guilty pleas to a charge of escape in the second degree, a charge of escape in the third degree, and two charges of  burglary in the third degree.  As part of this plea bargain, the State agreed to dismiss a number of charges against plaintiff, including the four charges arising out of the November 1, 1996, incident.  Exhibit 6 to Document #22.

## ILLEGAL ARREST

It is clear that the Fourth Amendment guarantees an individual "the right not to be arrested unless probable cause justifies the arrest." *Motes v. Myers*, 810 F.2d 1055, 1059 (11th Cir.1987)

11

(*citing Monroe v. Pape*, 365 U.S. 167 (1961), and *Duriso v. K-Mart No. 4195*, 559 F.2d 1274, 1277 (5th Cir.1977)). It is also clear that a "violation of this right may give rise to a claim for damages pursuant to [42 U.S.C. § 1983]." *Von Stein v. Brescher*, 904 F. 2d 572, 578 (11th Cir. 1990).[1]   However, "it is well established that 'the existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution.'"   *Weber v. Village of*

---

[1]Contrary to the defendants' assertions, *Heck v. Humphrey*, 512 U.S. 477 (1994), does not bar plaintiff's Fourth Amendment claim for money damages. As the Court of Appeals for the Seventh Circuit has explained in a similar case:

> [Plaintiff] Simpson's claims relating to an illegal search and an improper arrest are not barred by *Heck* because neither claim, if successful, would necessarily undermine the validity of his conviction for felony murder. *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir.1995) (*citing Heck*, 512 U.S. at ---- n. 7, 114 S.Ct. at 2372 n. 7 and *Smith v. Springer*, 859 F.2d 31 (7th Cir.1988)); *see also Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir.1995) ( "It is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest."); *but cf. Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir.1995) ("The fact that a Fourth Amendment violation may not necessarily cause an illegal conviction does not lessen the requirement [under *Heck*] that a plaintiff show that a conviction was invalid as an element of constitutional injury."). Simpson does not challenge his conviction or his sentence. Because an illegal search or arrest may be followed by a valid conviction, a conviction generally need not be set aside in order for a plaintiff to pursue a § 1983 claim under the Fourth Amendment. *See Haring v. Prosise*, 462 U.S. 306, 322, 103 S.Ct. 2368, 2377, 76 L.Ed.2d 595 (1983).

*Simpson v. Rowan*, 73 F. 3d 134, (7th Cir. 1995), *cert. denied*, 519 U.S. 833 (1996).

*Hanover Park*, 768 F. Supp. 630, 636 (N.D. Ill. 1991) (*quoting Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985).

> Probable cause to arrest exists when the facts and circumstances within the collective knowledge of law enforcement officers, or of which they have reasonably trustworthy information, would cause a prudent person to believe that the [individual to be arrested] has committed . . . an offense. *See, e.g., Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225-26, 13 L.Ed.2d 142 (1964); *Hargray v. Hallandale*, 57 F.3d 1560, 1571 (11th Cir.1995); *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir.1989). Because "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment," *Hill v. California*, 401 U.S. 797, 804, 91 S.Ct. 1106, 1111, 28 L.Ed.2d 484 (1971), "probable cause itself is a doctrine of reasonable probability and not certainty," *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir.1995); *see also Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir.1996) ("Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'"). It "must be judged not with clinical detachment, but with a common sense view to the realities of normal life." *Wilson v. Attaway*, 757 F.2d 1227, 1236 (11th Cir.1985).

*Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997), *cert. denied*, 523 U.S. 1031 (1998).

As noted above, the defendants have raised the defense of qualified immunity. Consequently, the question of probable cause and the issue of qualified immunity are "[i]ntertwined" in this case. *Von Stein v. Brescher*, 904 F. 2d at 578. Government officials exercising a discretionary function are entitled to

13

qualified immunity from damages unless their acts or decisions contravene clearly established constitutional or statutory rights of which a reasonable official should have knowledge. *See Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The "contours of the rights must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 636, 641 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As the Eleventh Circuit has explained, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates the law *in the circumstances*." *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc) (emphasis in original), *quoted in McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995).

> In determining whether qualified immunity exists [in the context of an illegal arrest claim], the issue is "not probable cause in fact but 'arguable' probable cause." *Gorra v. Hanson*, 880 F. 2d 95, 97 (8th Cir. 1989) (*quoting Floyd v. Farrell*, 765 F. 2d 1, 5 (1st Cir. 1985)). Actual probable cause is not necessary for an

> arrest to be objectively reasonable.  Indeed, "it is
> inevitable that law enforcement officials will in some
> cases reasonably but mistakenly conclude that probable
> cause is present, and . . . in such cases those officials
> . . . should not be held personally liable."  *Anderson*
> [*v. Creighton*, 483 U.S. 635, 641 (1987)].

*Von Stein v. Brescher*, 904 F. 2d at 579.  *Accord Pickens v. Hollowell*, 59 F. 3d 1203, 1206 (11th Cir. 1995).

In the present case, plaintiff was ultimately arrested for a number of offenses.  Because Deputy Wade's initial arrest of plaintiff for illegal possession of alcohol precipitated the physical altercation that lead to plaintiff's arrest for resisting arrest and provided the basis for the search of Ms. Jones' car, it is the lawfulness of that initial arrest that is dispositive of plaintiff's illegal arrest claim.  This court must therefore "determine whether reasonable officers in the same circumstances and possessing the same knowledge as [Deputy Wade] could have believed that probable cause existed to arrest Plaintiff for [illegal possession of alcohol]."  *Von Stein v. Brescher*, 904 F. 2d at 579. *Accord Jones v. Cannon*, 174 F. 3d 1271, 1283 (11th Cir. 1999).

It is undisputed that Deputy Wade initially stopped the vehicle in which plaintiff was a passenger because it had only one operational headlight.  Such a stop is clearly permitted under

*Terry v. Ohio*, 392 U. S.  1 (1968), and its progeny.  This stop occurred within Lawrence County, which is a "dry" county. *Berryhill v. State*, 372 So. 2d 355 (Ala. Civ. App. 1979).  As Deputy Wade approached the vehicle, he "could easily smell alcohol from within the car."  Because he could smell alcohol within the car, Deputy Wade asked Ms. Jones if there was "anything in the car."  Ms. Jones responded affirmatively and <u>plaintiff</u> retrieved a bottle of wine and a can of beer from under the seat.  In addition, plaintiff "kept asking [Deputy Wade] to give them a break and let them go."  These facts known to Deputy Wade were clearly sufficient to have caused a reasonable officer in those same circumstances to believe that plaintiff, as well as Ms. Jones, was illegally in possession of alcohol.  The court concludes that Deputy Wade had at least "arguable" probable cause to arrest plaintiff for illegal possession of alcohol.  Deputy Wade is therefore entitled to qualified immunity on plaintiff's illegal arrest claim.


<u>USE OF EXCESSIVE FORCE</u>

In addressing a claim of excessive force by an arresting officer, a court must apply a Fourth Amendment analysis to determine whether the challenged actions were reasonable under the

circumstances.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* at 396.  The standard requires a court to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id.* at 397.  This objective test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* at 396.

> [W]here [an] officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.  Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or the threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985); *Pruitt v. City of Montgomery*, 771 F.2d 1475, 1478-79 (11th Cir. 1985).  Where, however,  a fleeing felon poses no threat to the officer or others,

17

the use of deadly force to seize the suspect or prevent him from escaping is unreasonable. *See Tennessee v. Garner,* 471 U.S. at 11; *Harrell v. Decatur County, Ga.,* 22 F.3d 1570 (11th Cir. 1994).

As noted above, the defendants have raised the defense of qualified immunity. In the context of a claim of excessive force by an arresting officer, the "officer will be entitled to qualified immunity if his actions were 'objectively reasonable' – that is, if a reasonable officer in the same situation would have believed that the force used was not excessive." *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) (*citing Anderson v. Creighton*, 483 U.S. 635 (1987)). *See also Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) ("qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [the defendant officer's] position to conclude the force was unlawful").

In this case, plaintiff was not suspected of having committed a violent crime; however, Deputy Wade, Captain McWhorter, and Deputy McCuloch have all stated that plaintiff, who was intoxicated at the time of the arrest in question, was known to them to have a reputation for violence and for resisting arrest. In his response, plaintiff challenges what he perceives as inconsistencies

18

in the defendants' special report; he does not, however, dispute
that he was intoxicated or that he had a reputation for violence.
Nor does he dispute that he struggled and fought first with Deputy
Wade when Wade initially attempted to place him under arrest, then
later with both Deputy Wade and Deputy McCulloch.  It is therefore
undisputed that plaintiff was, in fact, physically resisting the
deputies' attempts to arrest him.

Deputy Wade states that he sprayed plaintiff with pepper spray
before Deputy McCulloch and Captain McWhorter arrived on the scene.
It does not appear that the spray was particularly effective as the
intoxicated plaintiff continued to struggle with Deputy Wade and
then with both Deputy Wade and Deputy McCulloch.   Plaintiff
complains that the deputies sprayed him twice with chemical spray
during the altercation.  He does not, however, allege  that the
total quantity of chemical spray used against him was potentially
dangerous, nor does he allege that he suffered any serious injury
therefrom.   As the District Court for the Middle District of
Alabama has observed: "[A]s a means of imposing force, pepper spray
is generally of limited intrusiveness. It is designed to disable a
suspect without causing permanent physical injury."  *Griffin v.
City of Clanton*,  932 F. Supp. 1359, 1369 (M.D. Ala. 1996).  Under

19

the circumstances of this case, the court finds that the deputies'
use of pepper spray in effecting the arrest of plaintiff was not an
excessive use of force. *See Tofano v. Reidel*, 61 F. Supp. 2d 289,
305-06 (D. N.J. 1999); *Gainor v. Douglas County*, 59 F. Supp. 2d
1259, 1287 (N.D. Ga. 1998).

The court further finds that, under the facts presented,
neither Deputy Wade nor Deputy McCulloch used any more force
against plaintiff than was reasonably necessary to effect the
arrest.  While plaintiff complains that the deputies struck him in
the face and tore his shirt off of him during the process, it is
undisputed that he suffered only a minor abrasion to his chin as a
result of his altercation with the deputies.   The Court of Appeals
for the Eleventh Circuit has "established the principle that the
application of *de minimis* force, without more, will not support a
claim for excessive force in violation of the Fourth Amendment."
*Nolin v. Isbell*, 207 F. 3d 1253, 1257 (11th Cir.  2000).
Consequently, "a minimal amount of force and injury, as present in
the facts of this case, will not defeat an officer's qualified
immunity in an excessive force claim." *Id*.  at 1258.   Deputy
Wade, Deputy McCulloch, and Captain McWhorter are therefore

entitled to qualified immunity on the plaintiff's excessive force claim.

## SHERIFF GRADY ROSE

Plaintiff did not allege in his complaint  that Sheriff Rose was personally involved in any manner in the incidents complained of.   Sheriff Rose argues in the special report that, due to this omission by plaintiff, he is entitled to a dismissal of the claims against him.   In his response to the defendants' special report, however, plaintiff asserts that Sheriff Rose failed to adequately train the deputies involved with regard to the use of pepper spray.

While "the doctrine of *respondeat superior* does not apply to § 1983 cases, a § 1983 plaintiff may maintain a theory of direct liability against a prison or other official if that official fails to properly train, supervise, direct, or control the actions of a subordinate who causes the injury." *Pearl v. Dobbs*, 649 F.2d 608, 609 (8th Cir. 1981).  "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal  connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).

21

> [A] causal connection [between the supervisor's actions
> and the alleged deprivation] can be established when a
> history of widespread abuse puts the responsible
> supervisor on notice of the need to correct the alleged
> deprivation, and he fails to do so.  The deprivations
> that constitute widespread abuse sufficient to notify the
> supervising official must be obvious, flagrant, rampant,
> and of continued duration . . . .

*Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations

omitted), *cert. denied*, 500 U.S. 933 (1991).  "A single incident,

or isolated incidents, do not ordinarily satisfy this burden."

*Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988).

Plaintiff claims that defendant Rose failed to properly train

the officers involved regarding the use of pepper spray.  To

support this claim, however, he has described only the single

incident in which Deputies Wade and McCulloch sprayed him with

pepper spray to effect an arrest.  While the defendants themselves

have provided evidence that plaintiff, who was clearly intoxicated,

was again sprayed with pepper spray when he was being placed in a

cell at the jail, plaintiff has not named the officers involved in

that incident as defendants, nor has he made any claim related to

that incident.  Moreover, plaintiff has failed to allege that any

of the officers used a dangerous amount of spray against him or

that he suffered any harm from any of the officers' use of pepper

spray.  Even considering that plaintiff was sprayed with pepper

22

spray again at the jail, it is clear that these two incidents do not establish the obvious, continuous, and widespread abuse necessary to have put defendant Rose on notice that any corrective action was required.

Moreover, defendant Rose states in his affidavit that "all officers are trained and certified to use [pepper] spray." Rose Affidavit (Attachement to Document #22) at 2. Plaintiff has failed to offer any specific factual allegations to dispute this statement. For the reasons stated above, Sheriff Rose is entitled to summary judgment in this action.

Based on the foregoing, defendants' motion for summary judgment (Document #22) is due to be GRANTED and this action DISMISSED WITH PREJUDICE.

A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

DATED this **26**th day of September, 2000.

_____
UNITED STATES DISTRICT JUDGE

23